**OUTTEN & GOLDEN LLP**
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
Delyanne Barros (DB 8788)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

REINALDO CRUZ, BENJAMIN TETTEYFIO,
ANTHONY MANNARINO, CHRISTOPHER
TURKO, DONNA PETERS, DENISE RAMSEY,
RAFIK MISSAK and JEFF ANDERSEN,
individually and on behalf of all others similarly
situated,

                  Plaintiffs,

        v.

HOOK-SUPERX, L.L.C., CVS CAREMARK
CORPORATION; CVS PHARMACY, INC.;
CVS ALBANY, L.L.C.; NEW JERSEY CVS
PHARMACY, L.L.C.; and MASSACHUSETTS
CVS PHARMACY, L.L.C.,

                  Defendants.

**09 Civ. 7717 (PAC)**

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR CONDITIONAL
## CERTIFICATION AND COURT-AUTHORIZED
## NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ............................................................................1

II.  HISTORY OF ASSISTANT MANAGER LITIGATION AGAINST CVS........................1

III.  PROCEDURAL HISTORY OF THIS CASE.................................................................3

IV.  THE PARTIES ............................................................................................................3

    A.  Defendants ..........................................................................................................3

    B.  Plaintiffs ..............................................................................................................5

V. STATEMENT OF FACTS ..............................................................................................6

    A.  CVS Stores Are Centrally Controlled and Uniformly Operated ...................................6

        1.  CVS Has a Uniform ASM Training Program ..................................................8
        2.  CVS Employees Are Subject to the Same Set of Work Rules............................10
        3.  CVS Has Uniform Compensation and Benefits ..................................................10
        4.  ASMs Have the Same Primary Job Duties.........................................................11
        5.  CVS Took Advantage of ASMs to Keep Its Hourly Labor Expenses Down.......13

ARGUMENT ....................................................................................................................14

    A.  Court-Authorized Notice Is Fair, Efficient, and Advances Public Policy Goals.........14

    B.  Expeditious Notice is Important to Preserving the ASMs' Rights .............................15

    C.  Plaintiffs Comfortably Exceed the Low Burden for Conditional Certification...........15

        1.  Plaintiffs And Other ASMs Are Similarly Situated With Respect To Their FLSA
            Claims....................................................................................................................16
        2.  Simply Asserting an FLSA Exemption Does Not Preclude a Collective
            Action ...................................................................................................................18
        3.  Evidence of Varying Job Duties Does Not Defeat Conditional Certification......22

    D.  The Court Should Approve Plaintiffs' Proposed Notice .............................................25

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.H. Phillips, Inc. v. Walling,*
 324 U.S. 490 (1945)...............................................................................................20

*Alba v. Papa John's USA, Inc.,*
 No. 05 Civ. 7487 (GAF), 2007 U.S. Dist. LEXIS 28079 (C.D. Cal. Feb. 8, 2007) ...............24

*Ashcroft v. Iqbal,*
 129 S. Ct. 1937 (2009).........................................................................................18

*Bilyou v. Duchess Beer Distrib., Inc.,*
 300 F.3d 217 (2d Cir. 2002)....................................................................................20

*Bouder v. Prudential Fin., Inc.,*
 No. 06 Civ. 4359 (DMC), 2008 U.S. Dist. Lexis 25103 (D.N.J. Mar. 27, 2008)...................17

*Braunstein v. E. Photo. Labs., Inc.,*
 600 F.2d 335 (2d Cir. 1975)................................................................................14, 15

*Cano v. Four M Food Corp.,*
 No. 08 Civ. 3005 (JFB)(AKT), 2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009)...16, 24

*Chowdhury v. Duane Reade, Inc.,*
 No. 06 Civ. 2295 (GEL), 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007).....18, 19, 20

*Corning Glass Works v. Brennan,*
 417 U.S. 188 (1974)..............................................................................................20

*Creten-Miller v. Westlake Hardware, Inc.,*
 No. 08 Civ. 2351 (KHV), 2009 U.S. Dist. LEXIS 60393 (D. Kan. July 15, 2009)................19

*Cruz v. Dollar Tree Stores, Inc.,*
 Nos. 07 Civ. 2050, 07 Civ. 4012 (SC), 2009 U.S. Dist. Lexis 46855 (N.D. Cal. May
 26, 2009) ...........................................................................................................17

*Cuzco v. Orion Builders, Inc.,*
 477 F. Supp. 2d 628 (S.D.N.Y. 2007)......................................................................15

*Damassia v. Duane Reade, Inc.*
 250 F.R.D. 152 (S.D.N.Y. 2008) ....................................................................19, 23, 24

*Damassia v. Duane Reade, Inc.,*
 No. 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 4, 2006).........passim

*Delgado v. Ortho-McNeil, Inc.*,
    No. 07 Civ. 263 (CJC), 2007 U.S. Dist. LEXIS 74731 (C.D. Cal. Aug. 6, 2007)..................17

*Diaz v. Scores Holding Co.*,
    No. 07 Civ. 8718 (RMB), 2008 U.S. Dist. LEXIS 38248 (S.D.N.Y. May 9, 2008) ..............15

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003).............................................................................15, 19

*Goldman v. Radioshack Corp.*,
    No. 03 Civ. 0032 (JRS), 2005 U.S. Dist. LEXIS 8742 (E.D. Pa. May 9, 2005). ...................24

*Hallissey v. America Online, Inc., et al.*,
    No. 99 Civ. 3785 (KTD), 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) ..............16

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997)...............................................................................15, 16

*Hoffmann-La Roche v. Sperling*,
    493 U.S. 165 (1989).....................................................................................................15, 25

*Holbrook v. Smith & Hawken, Ltd.*,
    246 F.R.D. 103 (D. Conn. 2007)...................................................................................19, 24

*Holt v. Rite Aid Corp.*,
    333 F. Supp. 2d 1265, 1268 (M.D. Ala. 2004). .............................................................19, 20

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) .........................................................................................24

*Jackson v. Papa John's USA, Inc.*,
    No. 08 Civ. 2791 (JSG), 2008 U.S. Dist. LEXIS 107650 (N.D. Ohio Feb. 13, 2008)............19

*Jacobsen v. Stop & Shop Supermarket Co.*,
    No. 02 Civ. 5915 (DLC), 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. May 14, 2003) ...............19

*Johnson v. Big Lots Stores, Inc.*,
    Nos. 04 Civ. 3201, 05 Civ. 6627 (SSV), 2007 U.S. Dist. LEXIS 96151,
    (E.D. La. Aug. 21, 2007) ....................................................................................................19

*Martin v. Malcolm Pirnie, Inc.*,
    949 F.2d 611 (2d Cir. 1991)................................................................................................20

*Morgan v. Family Dollar Stores*,
    551 F.3d 1233 (11th Cir. 2008) ................................................................................. passim

*Nerland v. Caribou Coffee Co.*,
    564 F. Supp. 2d 1010 (D. Minn. 2007).........................................................................19, 24

*Pendlebury v. Starbucks Coffee Co.*,
No. 04 Civ. 80521 (KAM), 2005 U.S. Dist. LEXIS 574
(S.D. Fla. Jan. 3, 2005) .......................................................................17, 19, 23, 24

*Realite v. Ark Rests., Corp.*,
7 F. Supp. 2d 303 (S.D.N.Y. 1998) ......................................................................15

*Ruggles v. WellPoint, Inc.*,
591 F. Supp. 2d 150 (N.D.N.Y. 2008) ..................................................................15

*Sipas v. Sammy's Fishbox, Inc.*,
No. 05 Civ. 10319 (PAC), 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006)............14

*Stillman v. Staples, Inc.*,
No. 07 Civ. 849 (KSH), 2008 U.S. Dist. Lexis 32853 (D.N.J. Apr. 22, 2008) ................17, 19

*Tierno v. Rite Aid Corp.*,
No. 05 Civ. 02520 (TEH), 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) ...........24

*Torres v. Gristede's Operating Corp.*,
No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006)........15, 16

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) ...............................................................................24

**STATUTES**

29 U.S.C. § 201, *et seq.*........................................................................................14

29 U.S.C. § 207(a)(1)............................................................................................16

29 U.S.C. § 213(a)(1)............................................................................................20

29 U.S.C. § 216(b) ...............................................................................................14

**OTHER AUTHORITIES**

29 C.F.R. § 541.100(a)(1)-(4) ...............................................................................20

29 C.F.R. § 541.102 .............................................................................................21

29 C.F.R. § 541.700 .............................................................................................21

29 C.F.R. §541.701 ..........................................................................................22, 23

# I.    PRELIMINARY STATEMENT

CVS[1], the largest retail pharmacy chain in the United States, fails to pay its salaried assistant store managers ("ASMs"), who regularly spend 55 or more hours each week performing manual labor and other non-exempt work, many of whom make $45,000 or less, any overtime compensation.  Plaintiffs seek to protect the rights of thousands of these ASMs across the country by sending them Court-approved notice of this action and letting them decide whether to join and attempt to recover their unpaid wages.[2]

Plaintiffs exceed their low burden on this motion.  Through CVS's corporate documents, declarations of 20 ASMs from Arizona, Connecticut, Florida, Georgia, Maryland, Massachusetts, Michigan, New Jersey, New York, North Carolina, Pennsylvania and the District of Columbia, declarations from 3 store managers, and other evidence, Plaintiffs demonstrate that CVS subjected all ASMs to the same (unlawful) policy – classifying them as exempt "executives" and denying them overtime premium pay.

# II.    HISTORY OF ASSISTANT MANAGER LITIGATION AGAINST CVS

This case is the seventh Fair Labor Standards Act ("FLSA") overtime lawsuit filed by an ASM against CVS since 2006.[3]  In addition to this action, five were filed as nationwide

---

[1] Plaintiffs refer to all Defendants collectively as "CVS."

[2] Plaintiffs do not seek to send notice to workers from California or Florida.  CVS classifies its California ASMs as non-exempt hourly employees.  Plaintiffs in another lawsuit, *Henderson v. Holiday CVS, LLC*, No. 09 Civ. 80909 (S.D. Fla., filed June 19, 2009) ("Henderson"), have requested court-authorized notice to workers in Florida.  *See* Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Conditional Certification as an FLSA Collective Action and for Court-Authorized Notice Pursuant to Section 216(b) of the FLSA, Ex. A (Pl's Motion to Authorize Notice to Potential Class Members and Incorporated Memo of Law ("*Henderson* Motion"), filed Oct. 19, 2009.)  All citations to evidence are to the Swartz Declaration as "Ex. ___."

[3] Ex. B, Cmplt. in *Ducasse v. CVS Caremark, Corp.*, No. 09 Civ. 4359 (E.D.N.Y., filed Oct. 9, 2009), Ex. C, Cmplt. in *Traebecke v. Holiday CVS, LLC*, No. 09 Civ. 22553 (S.D. Fla., filed Aug. 28, 2009) ("*Traebecke*"); Ex. D, Cmplt. in *Henderson*; Ex. E, Cmplt. in *McLean v. CVS*

collective actions.[4]  Despite this, no ASM has received Court-authorized notice of these FLSA claims or been informed of his or her right to join these cases.  CVS has achieved this not by defeating motions like this one, but by skillfully avoiding them.  No nationwide motion like this one has been filed in any Court.

CVS has used several methods.  In *Tata*, filed in the Middle District of Florida, CVS thwarted the collective action by settling with the named plaintiff.[5]  In *Nash*, filed in the District of Rhode Island, CVS made a Rule 68 offer of judgment to the named plaintiff and, when he rejected it, moved to dismiss his claim as moot.  Exs. J & K.  The motion is pending and the case is stalled.[6]

In *McLean*, filed in the District of Connecticut, CVS refused to provide nationwide discovery.[7]  It then filed an unprecedented Motion to Preclude Certification of Plaintiff's Proposed Collective Action before Plaintiffs had a chance to take the limited discovery they sought.[8]  The *McLean* plaintiff decided to drop her collective action allegations and proceed individually.[9]  In *Henderson*, filed in the Southern District of Florida, CVS also refused to

---

*Caremark Corp.*, No. 09 Civ. 345 (D. Conn., filed Mar. 3, 2009) ("*McLean*"); Ex. F, Cmplt. in *Nash v. CVS Caremark Corp.*, No. 09 Civ. 79 (D. RI filed Feb. 23, 2009) ("*Nash*"); Ex. G, Cmplt. in *Tata v. CVS Caremark Corp.*, No. 09 Civ. 180 (M.D. Fla., filed Jan. 29, 2009) ("*Tata*"); Ex. H, Cmplt. in *Gross v. CVS Corp.*, No. 06 Civ. 268 (S.D. Tex., filed Jan. 25, 2006) ("*Gross*").

[4] *Traebecke, Henderson, McLean, Nash,* and *Gross.*

[5] Ex. I (*Tata*, Doc. 23 Notice of Settlement and Stipulation of Voluntary Dismissal (May 5, 2009) and (*Tata*, Doc. 24 Report and Recommendation (May 5, 2009).)

[6] Ex. L (*Nash*, Electronic Case Filing docket, last visited November 5, 2009.)

[7] Ex. M (*McLean*, Doc. 47 Pls' Motion to Compel Discovery Responses (Aug. 26, 2009).)

[8] Ex. N (*McLean*, Doc. 40 Def. CVS Pharmacy, Inc.'s Memo of Law in Support of Its Motion to Preclude Certification of Pl's Proposed Collective Action (Aug. 14, 2009).)

[9] Ex. O (*McLean*, Docs. 69-70 Pl's Motion to File Second Am. Cmplt.) and Ex. P (*McLean*, Doc. 67 Pls' Sur-Reply in Response to Def. Motion to Preclude Conditional Certification.)  Plaintiffs initially decided not to seek to send notice to ASMs in Connecticut because of the then-overlapping *McLean* case.  Given the *McLean* Plaintiff's decision not to proceed with her collective action allegations and the strong Connecticut-based evidence Plaintiffs present here,

produce nationwide discovery.[10]  As a result, the named plaintiff moved for notice to workers in

Florida only.  There has been little activity on the dockets of *Traebecke*, filed in the Southern

District of Florida in August 2009,[11] and *Ducasse* filed in the Eastern District of New York in

October 2009[12] and to date nobody has opted into either case.

CVS has also ensured that very little that has happened in previous cases can benefit

plaintiffs in subsequent ones by insisting on strict discovery confidentiality orders prohibiting

documents produced in one case from being used in another.[13]  As a result, each new group of

plaintiffs and their lawyers has had to start virtually from scratch.[14]

## III.    PROCEDURAL HISTORY OF THIS CASE

Plaintiffs filed this lawsuit on September 4, 2009 and accomplished service on all

Defendants by October 9, 2009.  *See* Docket Nos. 1 and 18-23.  All of the Defendants filed a

single consolidated Answer on October 23, 2009.  *See* Docket No. 13.  An initial conference is

scheduled for November 18, 2009.  Discovery has not begun.  Swartz Decl. ¶ 4-5.

## IV.    THE PARTIES

### A.    Defendants

All of the Defendants are part of a single integrated enterprise that operates a nationwide

chain of retail drugstores and has employed the named plaintiffs and their co-workers.  Ex. W

---

Plaintiffs do seek to send notice to ASMs in Connecticut.  Plaintiffs will seek leave to amend
their Complaint to remove the Connecticut exclusion and add an exclusion for California.

[10] Ex. Q (*Henderson*, Doc. 39 Pls' Motion to Compel (Oct. 26, 2009).)

[11] Ex. R (Electronic Case Filing docket, last visited on Nov. 5, 2009.)

[12] Ex. S (Electronic Case Filing docket, last visited on Nov. 5, 2009.)

[13] *See e.g.,* Ex. T (*Henderson*, Doc. 36 Motion for Protective Order (Oct. 15, 2009.) ("Qualified
persons with access to Confidential information shall use the information solely for litigation,
preparation for trial, trial and/or settlement of this Action."); Ex. U (*McLean*, Doc. 35, Joint
Motion for Protective Order (July 23, 2009) (same).)

[14] In support of this motion, Plaintiffs cite to evidence that has been publically filed in other
cases.  There is much more information to which CVS has access but Plaintiffs do not. *See* Ex. V
(*McLean*, Doc. 56 Order Granting Motion to Seal (Sept. 15, 2009).)

(Class Action Complaint ("Cmplt.") ¶ 1. Defendant CVS Caremark Corporation ("CVS Caremark") is a multi-billion dollar chain of retail drugstores located in 41 states and the District of Columbia. *See* Ex. X (CVS Caremark Corp 10-K, filed Feb. 27, 2009 ("Form 10-K") at 7 of 231. Headquartered at One CVS Drive in Woonsocket, Rhode Island, Ex. Y (Defs' Answer and Defenses to Pls' Cmplt. ("Answer")) at ¶ 41, it is the largest provider of prescriptions and related healthcare services in the United States, filling or managing more than one billion prescriptions annually. Ex. X at 4 of 231. As of December 31, 2008, CVS Caremark reports ". . . we employed approximately 215,000 associates . . ." *Id.* at 9 of 231. CVS Caremark was born from the merger of CVS Corporation and Caremark Rx, Inc. in March 2007. *Id.* On its website CVS Caremark boasts of CVS Caremark's unified company culture:

> At CVS Caremark, we understand how much a company's culture impacts its people and ultimately its performance. That's why, soon after our merger in 2007, we quickly established a unifying Vision, Mission and set of Values that defines our company and serves as a guiding beacon for how we conduct our business every day. **In our stores** and mail service pharmacies, in our distribution centers and corporate facilities, and in the thousands of communities we serve, these principles inspire us to go above and beyond for our customers, our clients and our colleagues.

Ex. Z (http://info.cvscaremark.com/our-company/our-culture, last visited Nov. 4, 2009 (emphasis added).) Among its list of significant subsidiaries, CVS Caremark identifies: CVS Pharmacy, Inc., Hook-SupeRx, L.L.C., CVS Albany, L.L.C., Massachusetts CVS Pharmacy, L.L.C. Ex. X at 225 of 231.

CVS Pharmacy is a non-publicly held entity and a wholly owned subsidiary of CVS Caremark, Ex. AA (Defs' Rule 7.1 Stmt) at 1, headquartered at One CVS Drive in Woonsocket, Rhode Island, Ex. Y (Answer) at 42. According to CVS Caremark's 2008 Form 10-K filing, CVS Pharmacy is the immediate parent of approximately 700 entities that operate CVS retail drugstores in the U.S. Ex. X at 225 of 231. These entities include Defendants Hook-SupeRX,

L.L.C., CVS Albany, L.L.C., New Jersey CVS Pharmacy, L.L.C., and Massachusetts CVS Pharmacy, L.L.C. ("The LLCs"). Ex. AA (Defs' Rule 7.1 Stmt.)

The LLCs operate CVS drugstores in various states. Ex. Y (Answer) ¶¶ 40-45. Most of the LLC's mailing addresses are "One CVS Drive in Woonsocket, Rhode Island."[15] Defendants admit that the LLCs employed some of the named plaintiffs. *Id.* at ¶¶ 13, 17, 21 and 25 and that some are subsidiaries of CVS Caremark, *Id.* at ¶¶ 43, 44, and 44. Although CVS denies that CVS Pharmacy is an "employer" of the named plaintiffs in this case, Ex. Y (Answer) at ¶ 163, it has stipulated that CVS Pharmacy employed plaintiff-employees in other cases. See Ex. GGG (McLean, Doc. 44 Answer to Am. Compl. ¶ 10 (Aug. 25, 2009); Ex. HHH (*West v. CVS Pharmacy*, *Inc.*, No. 09 Civ. 2279 (S.D. Tex. filed July 17, 2009)), Doc. 3 Answer ¶ 5 (Aug. 14, 2009).)

**B.      Plaintiffs**

Named Plaintiffs, Reinaldo Cruz, Benjamin Tetteyfio, Anthony Mannarino, Christopher Turko, Donna Peters, Denise Ramsey, Rafik Missak and Jeff Andersen are former ASMs who worked for CVS in New York, New Jersey, Massachusetts, Pennsylvania, North Carolina and Michigan. *See* Ex. W. Ten other workers, from these states, as well as Arizona and Georgia have joined this case as Opt-In Plaintiffs. Swartz Decl. ¶ 6.

---

[15] Massachusetts CVS Pharmacy, L.L.C. designates One CVS Drive, Woonsocket, Rhode Island as its principal office. Ex. TT (http://corp.sec.state.ma.us/corp/corpsearch/CorpSearchSummary.asp?ReadFromDB=True&UpdateAllowed=&FEIN=203621694, last visited Nov. 2, 2009) 13 of 14. Hook-SuperX, L.L.C., CVS Albany, L.L.C. and New Jersey CVS Pharmacy, L.L.C. designate One CVS Drive Woonsocket, Rhode Island as their mailing address. Ex. UU (http://ucc.state.ri.us/CorpSearch/CorpSearchSummary.asp?ReadFromDB=True&UpdateAllowed=&FEIN=000505140, last visited Nov. 2, 2009), Ex. VV (R. Cruz CVS Earnings Statement), Ex. WW (C. Turko CVS Earnings Statement).

## V. STATEMENT OF FACTS

### A. CVS Stores Are Centrally Controlled and Uniformly Operated.

CVS is a fully integrated pharmacy services company. Ex. X at 4 of 231. The CVS corporate office in Woonsocket, RI maintains tight top-down control over its retail pharmacies nationwide. It assigns each store a unique number by which it can be identified, dividing its stores into regions, districts and areas.[16] The corporate office coordinates store operations.[17] For example, in 2006, CVS introduced a program called the "front store initiative" or "FSI." According to CVS employees, "FSI was a set of procedures that each store had to follow for organizing the shelves and the back room."[18] Woonsocket also collects and maintains information on each store's performance.[19]

The CVS corporate office micromanages its retail stores in order to ensure that they all operate the same way. The individual stores receive regular communications from Woonsocket through email and its corporate information technology systems (the "SMART" system).[20] "Some of these communications apply to many stores in a district, region, area, or country-wide." Ex. JJ (Leekin Dec.) ¶ 19. CVS managers receive information from CVS's corporate office regarding nation-wide company policies and directives Ex. FF, (DeCerb Dec.) ¶ 17; Ex. JJ

---

[16] Ex. CC (Carago Dec.) ¶ 5; Ex. EE (Cruz Dec.) ¶ 10; Ex. FF (DeCerb Dec.) ¶ 7; Ex. II (Jackson Dec.) ¶ 8; Ex. JJ (Leekin Dec.) ¶ 10; Ex. MM (Newbegin Dec.) ¶ 7; Ex. NN (Ogren Dec.) ¶ 5; Ex. OO (Peters Dec.) ¶ 4; Ex. QQ (Tetteyfio Dec.) ¶ 8; Ex. RR (Turko Dec.) ¶ 10; Ex. SS (Williams Dec.) ¶ 4.

[17] Ex. FF (DeCerb Dec.) ¶ 15; Ex. EE (Cruz Dec.) ¶ 12; Ex. GG (Holmes Dec.) ¶ 11; Ex. II (Jackson Dec.) ¶ 10; Ex. JJ (Leekin Dec.) ¶ 15-16; Ex. NN (Ogren Dec.) ¶ 9; Ex. QQ (Tetteyfio Dec.) ¶ 10; Ex. RR (Turko Dec.) ¶ 12; Ex. SS (Williams Dec.) ¶ 7.

[18] Ex. EE (Cruz Dec.) ¶ 12; Ex. FF (DeCerb Dec.) ¶ 22; Ex. EE (Cruz Dec.) ¶ 12 ; Ex. GG (Holmes Dec.) ¶ 11; Ex. II (Jackson Dec.) ¶ 10; Ex. JJ (Leekin Dec.) ¶ 24; Ex. NN (Ogren Dec.) ¶ 9; Ex. QQ (Tetteyfio Dec.) ¶ 10; Ex. RR (Turko Dec.) ¶ 12; Ex. SS (Williams Dec.) ¶ 7.

[19] Ex. FF (DeCerb Dec.) ¶ 15; Ex. JJ (Leekin Dec.) ¶ 16.

[20] Ex. CC (Carago Dec.) ¶ 7; Ex. EE (Cruz Dec.) ¶ 13; Ex. FF (DeCerb Dec.) ¶¶ 17-21; Ex. GG (Holmes Dec.) ¶ 12; Ex. HH (Hunter Dec.) ¶ 5; Ex. JJ (Leekin Dec.) ¶ 19; Ex. NN (Ogren Dec.) ¶ 10; Ex. QQ (Tetteyfio Dec.) ¶ 11; Ex. RR (Turko Dec.) ¶ 13; Ex. SS (Williams Dec.) ¶ 8.

(Leekin Dec.) ¶ 19; as well as merchandizing information, instructions on sales and promotions and planograms.[21] Woonsocket control's employee tasks and store budgets. It distributes a "Monthly Planner" dictating tasks for the month and a "Workload Planner" dictating a list of daily activities.[22] It also sends each of its stores a "labor budget," allotting the stores a set number of labor hours per week.[23] Each store is required to report to the corporate office regularly. Ex. FF (DeCerb Dec.) ¶ 21; Ex. JJ (Leekin Dec.) ¶ 23. CVS corporate holds periodic district, region and area-wide meetings for its store managers. Ex. FF (DeCerb Dec.) ¶ 15; Ex. JJ (Leekin Dec.) ¶¶ 15, 17. In its 2008 Corporate Responsibility Report, CVS boasts of its "engagement" with its employees, including conducting a company-wide "Employee Engagement Survey."[24]

The CVS business model requires uniformity. "To deliver the highest level of service to our customers, we devote considerable time and attention to our people and service standards. We emphasize attracting and training, knowledgeable, friendly and helpful associates to work in our stores, clinics and throughout our organization." Ex. X at 9 of 231. CVS advertises on its

---

[21] Ex. CC (Carago Dec.) ¶ 7; Ex. EE (Cruz Dec.) ¶ 13; Ex. FF (DeCerb Dec.) ¶¶ 17-21; Ex. GG (Holmes Dec.) ¶ 12; Ex. HH (Hunter Dec.) ¶ 5; Ex. JJ (Leekin Dec.) ¶ 20-21; Ex. NN (Ogren Dec.) ¶ 10; Ex. QQ (Tetteyfio Dec.) ¶ 11; Ex. RR (Turko Dec.) ¶ 13; Ex. SS (Williams Dec.) ¶ 8.

[22] Ex. BB (Andersen Dec.) ¶ 17; Ex. DD (Castano Dec.) ¶ 15; Ex. EE (Cruz Dec.) ¶ 14; Ex. FF (DeCerb Dec.) ¶¶ 20-21; Ex. GG (Holmes Dec.) ¶ 13; Ex. JJ (Leekin Dec.) ¶¶ 22-23; Ex. KK (Mannarino Dec.) ¶ 18; Ex. LL (Missak Dec.) ¶ 18; Ex. MM (Newbegin Dec.) ¶ 20; Ex. NN (Ogren Dec.) 11 6; Ex. OO (Peters Dec.) ¶ 18; Ex. QQ (Tetteyfio Dec.) ¶ 12; Ex. QQ (Turko Dec.) ¶ 14; Ex. SS (Williams Dec.) ¶ 9.

[23] Ex. BB (Andersen Dec.) ¶ 5; Ex. ZZ (Bessant Dec.) ¶ 7; Ex. CC (Carago Dec.) ¶ 9; Ex. EE (Cruz Dec.) ¶ 13; Ex. FF (DeCerb Dec.) ¶ 23; Ex. GG (Holmes Dec.) ¶ 14; Ex. II (Jackson Dec.) ¶ 12; Ex. JJ (Leekin Dec.) ¶¶ 25-26; Ex. KK (Mannarino Dec.) ¶ 25; Ex. MM (Newbegin Dec.) ¶ 27; Ex. NN (Ogren Dec.) ¶ 22; Ex. QQ (Tetteyfio Dec.) ¶ 13; Ex. SS (Williams Dec.) ¶ 10.

[24] "Regular communication e-mails and voicemails from management;" "Employee publication;" "Code of Conduct and Ethics Hotline;" "Intranet sites," "Employee Engagement Survey," "Problem solving/issue resolution process;" "Networking groups;" "Ongoing training programs and career development initiatives;" and "Wellness programs and initiatives." Ex. XX (Improving Outcomes: 2008 Corporate Responsibility) at 11, 37.

website, "Step inside **any of our 7,000 CVS/pharmacy locations from coast to coast**, and you'll see . . ." Ex. YY ([http://info.cvscaremark.com/our-company/our-businesses/retail-pharmacy](http://info.cvscaremark.com/our-company/our-businesses/retail-pharmacy), last visited Oct. 28, 2009 (emphasis added).)  CVS initiatives stress this uniformity.  CVS retail employees wear a standard uniform.  According to CVS, the company ". . . learned from employee feedback . . . that they did not like the standard uniform work in CVS retail stores.  Upon learning this, we invited employees to participate in a redesign of uniforms, which were introduced in early 2009."  *Id.* at 37.

To accomplish this uniformity, CVS requires its ASMs (and other employees) to go through a uniform training program, subjects all ASMs to the same set of work rules, compensates all ASMs the same way, and assigns all ASMs basically the same job duties – regardless of where they work.

### 1.  CVS Has a Uniform ASM Training Program.

CVS requires ASMs to complete a uniform training program, the CVS Store Management Development Program.  This program was developed at CVS's corporate office in Woonsocket, RI, Ex. AAA (*Henderson* Motion, Doc. 33-3 Corp Rep. Dep. ("Corp Rep. Dep.")) at 171:13-14, and is used nationwide.  Ex. FF (DeCerb Dec.) ¶ 13; Ex. JJ (Leekin Dec.) ¶ 14.  It is broken down into phases.  Phase I includes "initial training" on "operations procedures,"[25] not management skills.[26]  It covers basic store operations such as how to use the register, how to set-up shelves, how to count money, how to handle overstock, and how to maintain the appearance

---

[25] Ex. BBB at 2 of each posting**,** Ex. CCC at 2 of each posting.
[26] Ex. BB (Andersen Dec.) ¶ 5; Ex. ZZ (Bessant Dec.) ¶ 7; Ex. CC (Carago Dec.) ¶ 3;  Ex. DD (Castano Dec.) ¶ 7; Ex. EE (Cruz Dec.) ¶ 8; Ex. FF (DeCerb Dec.) ¶ 9; Ex. GG (Holmes Dec.) ¶ 7; Ex. HH (Hunter Dec.) ¶ 5; Ex. II (Jackson Dec.) ¶ 6; Ex. OOO (Jones Dec.) ¶ 6; Ex. JJ (Leekin Dec.) ¶ 11; Ex. KK (Mannarino Dec.) ¶ 6; Ex. LL (Missak Dec.) ¶ 7; Ex. MM (Newbegin Dec.) ¶ 9; Ex. NN (Ogren Dec.) ¶ 6; Ex. OO (Peters Dec.) ¶ 6; Ex. PP (Ramsey Dec.) ¶ 5; Ex. QQ (Tetteyfio Dec.) ¶ 6; Ex. RR (Turko Dec.) ¶ 8; Ex. SS (Williams Dec.) ¶ 5.

of the store.[27]  Phase I does not contain any training on hiring, firing, or making

recommendations about hiring, firing, or changes in employment status.[28]  ASMs in Phase I

typically work at a CVS "training store" under the supervision of a Phase I Trainer and Training

Store Manager and complete approximately 50 pre-set training "modules."[29]  CVS requires

ASMs to complete Phase I before they advance to Phase II.  Ex. DDD at 20.  CVS also requires

hourly shift supervisors to complete Phase I training.[30]  ASMs receive "the training necessary to

take operational control of a CVS" store in Phase II.  Ex. BBB at 2 of each posting, Ex. CCC at 2

of each posting.

CVS maintains a corporate website called "CVS Caremark LearnNet" which ASMs in

every store, in every state, can access to complete the training modules.  Ex. DDD at 18.  This

corporate intranet as "a space where all CVS colleagues can communicate, learn, collaborate and

teach." *Id.* at 20.  CVS has also established six CVS Regional Learning Centers in cities across

the country.  Each contains a mock CVS store "where training is delivered to both new and

current," employees.  Ex. XX at 39.

---

[27] Ex. DDD (*Henderson Motion*, Doc. 34-6 CVS Store Management Development Program) 19;
Ex. ZZ (Bessant Dec.) ¶ 7; Ex. OOO (Jones Dec.) ¶ 6; Ex. KK (Mannarino Dec.) ¶ 6; Ex. LL
(Missak Dec.) ¶ 7; Ex. MM (Newbegin Dec.) ¶ 9; Ex. OO (Peters Dec.) ¶ 6.

[28] Ex. DDD (Training Manual); Ex. ZZ (Bessant Dec.) ¶ 7; Ex. CC (Carago Dec.) ¶ 3;  Ex. DD
(Castano Dec.) ¶ 7; Ex. EE (Cruz Dec.) ¶ 8; Ex. FF (DeCerb Dec.) ¶ 10; Ex. GG (Holmes Dec.) ¶
7; Ex. II (Jackson Dec.) ¶ 6; Ex. OOO (Jones Dec.) ¶ 6; Ex. JJ (Leekin Dec.) ¶ 11; Ex. PP
(Ramsey Dec.) ¶ 5; Ex. QQ (Tetteyfio Dec.) ¶ 6; Ex. RR (Turko Dec.) ¶ 8; Ex. SS (Williams
Dec.) ¶ 5.

[29] Ex. DDD (Training Manual) 19; Ex. BB (Andersen Dec.) ¶ 4; Ex. ZZ (Bessant Dec.) ¶¶ 6-7;
Ex. EE (Cruz Dec.) ¶ 7; Ex. FF (DeCerb Dec.) ¶ 9; Ex. II (Jackson Dec.) ¶ 5; Ex. OOO (Jones
Dec.) ¶¶ 5-6; Ex. KK (Mannarino Dec.) ¶ 5; Ex. LL (Missak Dec.) ¶ 6; Ex. MM (Newbegin
Dec.) ¶ 8; Ex. OO (Peters Dec.) ¶ 5; Ex. PP (Ramsey Dec.) ¶ 4; Ex. QQ (Tetteyfio Dec.) ¶ 5; Ex.
RR (Turko Dec.) ¶ 7.

[30] Ex. DDD  (Training Manual) 6; Ex. BB (Andersen Dec.) ¶ 6; Ex. CC (Carago Dec.) ¶ 4; Ex.
EE (Cruz Dec.) ¶ 9; Ex. HH (Hunter Dec.) ¶ 5; Ex. II (Jackson Dec.) ¶ 7; Ex. OOO (Jones Dec.)
¶ 7; Ex. KK (Mannarino Dec.) ¶ 8; Ex. LL (Missak Dec.) ¶ 8; Ex. MM (Newbegin Dec.) ¶ 10;
Ex. NN (Ogren Dec.) ¶ 6; Ex. OO (Peters Dec.) ¶ 7; Ex. PP (Ramsey Dec.) ¶ 6; Ex. QQ
(Tetteyfio Dec.) ¶ 7; Ex. RR (Turko Dec.) ¶ 9; Ex. SS (Williams Dec.) ¶ 5.

## 2. CVS Employees Are Subject to the Same Set of Work Rules.

CVS requires all ASMs to follow the same centrally prescribed rules and procedures, which CVS corporate communicates through written materials, its centrally operated information technology systems, and through the uniform training program.[31] CVS enforces a company-wide Code of Conduct, which instructs, "It is important to read this Code and understand the roles and responsibilities of a CVS Caremark employee." Ex. EEE (*Henderson* Motion, Doc. 34-7 CVS Caremark Code of Conduct) 5.[32] CVS's 2008 Corporate Responsibility Report notes, "The CVS Caremark Code of Conduct defines our high ethical standards for business conduct and applies to all CVS Caremark employees . . ." Ex. XX at 10. Woonsocket also operates and monitors a 1-800 "Ethics Line" that employees can use to make complaints.[33]

## 3. CVS Has Uniform Compensation and Benefits.

CVS corporate determines compensation ranges and methods for all ASMs. Ex. AAA at 159:6. It classified all ASMs as "exempt" from the overtime provisions of the FLSA[34] and paid

---

[31] Ex. DDD (training manual); Ex. BB (Andersen Dec.) ¶ 5; Ex. ZZ (Bessant Dec.) ¶ 7; Ex. CC (Carago Dec.) ¶ 3; Ex. DD (Castano Dec.) ¶ 7; Ex. EE (Cruz Dec.) ¶ 8; Ex. FF (DeCerb Dec.) ¶ 9; Ex. GG (Holmes Dec.) ¶ 7; Ex. HH (Hunter Dec.) ¶ 5; Ex. II (Jackson Dec.) ¶ 6; Ex. JJ (Leekin Dec.) ¶ 11; Ex. KK (Mannarino Dec.) ¶ 6; Ex. LL (Missak Dec.) ¶ 7; Ex. MM (Newbegin Dec.) ¶ 9; Ex. NN (Ogren Dec.) ¶ 6; Ex. OO (Peters Dec.) ¶ 6; Ex. PP (Ramsey Dec.) ¶ 5; Ex. QQ (Tetteyfio Dec.) ¶ 6; Ex. RR (Turko Dec.) ¶ 8; Ex. SS (Williams Dec.) ¶ 5.

[32] It also sets CVS's nationwide policies on "Non-Discrimination, Non-Harassment and Non-Violence," "Health and Safety," "Drug and Alcohol," and Employee Privacy," among other things. Ex. EEE.

[33] Ex. CC (Carago Dec.) ¶ 10; Ex. EE (Cruz Dec.) ¶ 16; Ex. GG (Holmes Dec.) ¶ 15; Ex. II (Jackson Dec.) ¶ 13; Ex. NN (Ogren Dec.) ¶ 13; Ex. QQ (Tetteyfio Dec.) ¶ 14; Ex. RR (Turko Dec.) ¶ 16; Ex. SS (Williams Dec.) ¶ 11.

[34] This excludes ASMs from California, who were hourly non-exempt employees, and to whom Plaintiffs do not seek to send notice.

them weekly wage that did not increase when they worked overtime hours.[35]  CVS made this classification decision in its corporate headquarters in Woonsocket, RI.  Ex. AAA at 171:13-14. In doing so, it does not appear that CVS did a person-by-person survey of each ASM's job duties and made a separate classification decision for each one.[36]  It appears to have classified them all as "exempt" in one fell swoop.

### 4.  ASMs Have the Same Primary Job Duties.

All ASMs have the same primary job duties.  They spend the vast majority of their time performing manual labor and customer-service related tasks including shelving merchandise, counting money, unpacking boxes, loading and unloading trucks, taking out trash, cleaning the store, helping customers, and working the cash register.[37]  These duties do not vary in any significant way from store to store,[38] and are essentially the same as those of the hourly shift supervisors.[39]

---

[35] Ex. BB (Andersen Dec.) ¶¶  22-23; Ex. ZZ (Bessant Dec.) ¶¶ 25-27; Ex. CC (Carago Dec.) ¶¶ 19-20;  Ex. DD (Castano Dec.) ¶¶ 21-22; Ex. EE (Cruz Dec.) ¶¶ 27-28; Ex. FF (DeCerb Dec.) ¶¶ 33-35; Ex. GG (Holmes Dec.) ¶¶ 24-25; Ex. HH (Hunter Dec.) ¶¶ 24-25; Ex. II (Jackson Dec.) ¶ 22-23; Ex. OOO (Jones Dec.) ¶¶ 18-19; Ex. JJ (Leekin Dec.) ¶¶ 35-38; Ex. KK (Mannarino Dec.) ¶¶ 23-26; Ex. LL (Missak Dec.) ¶ 23-24; Ex. MM (Newbegin Dec.) ¶¶ 25-28; Ex. NN (Ogren Dec.) ¶¶ 20-23; Ex. OO (Peters Dec.) ¶¶ 23-24; Ex. PP (Ramsey Dec.) ¶¶ 17-18; Ex. QQ (Tetteyfio Dec.) ¶¶ 25-26; Ex. RR (Turko Dec.) ¶¶ 26-27; Ex. SS (Williams Dec.) ¶¶ 22-23.

[36] Ex. BB (Andersen Dec.) ¶ 21; Ex. ZZ (Bessant Dec.) ¶ 24; Ex. CC (Carago Dec.) ¶ 18;  Ex. DD (Castano Dec.) ¶ 19; Ex. EE (Cruz Dec.) ¶ 26; Ex. FF (DeCerb Dec.) ¶ 32; Ex. HH (Hunter Dec.) ¶ 23; Ex. II (Jackson Dec.) ¶ 21; Ex. OOO (Jones Dec.) ¶ 17; Ex. JJ (Leekin Dec.) ¶ 34; Ex. KK (Mannarino Dec.) ¶ 22; Ex. LL (Missak Dec.) ¶ 22; Ex. MM (Newbegin Dec.) ¶ 24; Ex. NN (Ogren Dec.) ¶ 19; Ex. OO (Peters Dec.) ¶ 22; Ex. PP (Ramsey Dec.) ¶ 16; Ex. QQ (Tetteyfio Dec.) ¶ 24; Ex. RR (Turko Dec.) ¶ 25; Ex. SS (Williams Dec.) ¶ 21.

[37] Ex. BB (Andersen Dec.) ¶ 9; Ex. ZZ (Bessant Dec.) ¶ 12; Ex. CC (Carago Dec.) ¶ 11;  Ex. DD (Castano Dec.) ¶ 9; Ex. EE (Cruz Dec.) ¶ 17; Ex. FF (DeCerb Dec.) ¶ 26; Ex. GG (Holmes Dec.) ¶ 16; Ex. HH (Hunter Dec.) ¶¶ 8-10; Ex. II (Jackson Dec.) ¶ 14; Ex. OOO (Jones Dec.) ¶ 10; Ex. JJ (Leekin Dec.) ¶ 27; Ex. KK (Mannarino Dec.) ¶ 10; Ex. LL (Missak Dec.) ¶ 10; Ex. MM (Newbegin Dec.) ¶ 12; Ex. NN (Ogren Dec.) ¶ 14; Ex. OO (Peters Dec.) ¶ 9; Ex. PP (Ramsey Dec.) ¶ 7; Ex. QQ (Tetteyfio Dec.) ¶ 15; Ex. RR (Turko Dec.) ¶ 17; Ex. SS (Williams Dec.) ¶ 12.

[38] Ex. BB (Andersen Dec.) ¶ 20; Ex. ZZ (Bessant Dec.) ¶ 23; Ex. CC (Carago Dec.) ¶ 11; Ex. DD (Castano Dec.) ¶ 9; Ex. EE (Cruz Dec.) ¶ 18; Ex. FF (DeCerb Dec.) ¶ 31; Ex. GG (Holmes

ASM's are not free from supervision and take substantial direction from their store managers.[40]  Store managers assign store workers, including ASMs, daily tasks, many of which had been communicated by corporate headquarters in Woonsocket.  Ex. FF (DeCerb Dec.) ¶¶ 20-21; Ex. JJ (Leekin Dec.) ¶¶ 22-23.  ASMs did not have independent discretion to make important decisions.  ASMs did not decide what merchandise to order or what to put on the shelves.[41]  It was not part of their regular job duties, to hire, fire, promote, or demote employees, or to raise or lower their pay.[42]  They did not frequently make recommendations about changes in employment status and, when they did, their suggestions were not given significant weight.[43]  None of this

---

Dec.) ¶ 17; Ex. HH (Hunter Dec.) ¶ 22; Ex. II (Jackson Dec.) ¶ 15; Ex. OOO (Jones Dec.) ¶ 16; Ex. JJ (Leekin Dec.) ¶ 33; Ex. KK (Mannarino Dec.) ¶ 21; Ex. LL (Missak Dec.) ¶ 21; Ex. MM (Newbegin Dec.) ¶ 23; Ex. OO (Peters Dec.) ¶ 21; Ex. PP (Ramsey Dec.) ¶ 7; Ex. QQ (Tetteyfio Dec.) ¶ 16; Ex. RR (Turko Dec.) ¶ 18; Ex. SS (Williams Dec.) ¶ 13.

[39] Ex. ZZ (Bessant Dec.) ¶ 13; Ex. CC (Carago Dec.) ¶ 17; Ex. OO (Peters Dec.) ¶ 10; Ex. EE (Cruz Dec.) ¶ 25; Ex. GG (Holmes Dec.) ¶ 23; Ex. II (Jackson Dec.) ¶ 20; Ex. PP (Ramsey Dec.) ¶ 15; Ex. QQ (Tetteyfio Dec.) ¶ 16; Ex. RR (Turko Dec.) ¶ 24; Ex. SS (Williams Dec.) ¶ 20.

[40] Ex. BB (Andersen Dec.) ¶ 17; Ex. ZZ (Bessant Dec.) ¶ 20; Ex. CC (Carago Dec.) ¶ 14; Ex. DD (Castano Dec.) ¶ 15; Ex. EE (Cruz Dec.) ¶ 22; Ex. FF (DeCerb Dec.) ¶ 27; Ex. GG (Holmes Dec.) ¶ 20; Ex. HH (Hunter Dec.) ¶ 19; Ex. II (Jackson Dec.) ¶ 18; Ex. OOO (Jones Dec.) ¶ 13; Ex. JJ (Leekin Dec.) ¶ 28; Ex. KK (Mannarino Dec.) ¶ 18; Ex. LL (Missak Dec.) ¶ 18; Ex. OO (Peters Dec.) ¶ 18; Ex. PP (Ramsey Dec.) ¶ 12; Ex. QQ (Tetteyfio Dec.) ¶ 20; Ex. RR (Turko Dec.) ¶ 21; Ex. SS (Williams Dec.) ¶ 17.

[41] Ex. BB (Andersen Dec.) ¶ 10; Ex. ZZ (Bessant Dec.) ¶ 14; Ex. CC (Carago Dec.) ¶ 12; Ex. DD (Castano Dec.) ¶ 11; Ex. EE (Cruz Dec.) ¶ 19; Ex. FF (DeCerb Dec.) ¶ 27; Ex. GG (Holmes Dec.) ¶ 18; Ex. HH (Hunter Dec.) ¶ 12; Ex. II (Jackson Dec.) ¶ 16; Ex. OOO (Jones Dec.) ¶ 11; Ex. JJ (Leekin Dec.) ¶ 28; Ex. KK (Mannarino Dec.) ¶ 12; Ex. LL (Missak Dec.) ¶ 12; Ex. MM (Newbegin Dec.) ¶ 14; Ex. NN (Ogren Dec.) ¶ 16; Ex. OO (Peters Dec.) ¶ 11; Ex. PP (Ramsey Dec.) ¶ 9; Ex. QQ (Tetteyfio Dec.) ¶ 17; Ex. RR (Turko Dec.) ¶ 19; Ex. SS (Williams Dec.) ¶ 14.

[42] Ex. BB (Andersen Dec.) ¶ 15; Ex. ZZ (Bessant Dec.) ¶ 18; Ex. CC (Carago Dec.) ¶ 13; Ex. DD (Castano Dec.) ¶ 14; Ex. EE (Cruz Dec.) ¶ 21; Ex. FF (DeCerb Dec.) ¶ 28; Ex. GG (Holmes Dec.) ¶ 19; Ex. HH (Hunter Dec.) ¶ 17; Ex. II (Jackson Dec.) ¶ 17; Ex. OOO (Jones Dec.) ¶ 12; Ex. JJ (Leekin Dec.) ¶ 29; Ex. KK (Mannarino Dec.) ¶ 16; Ex. LL (Missak Dec.) ¶ 16; Ex. MM (Newbegin Dec.) ¶ 18; Ex. NN (Ogren Dec.) ¶ 16; Ex. OO (Peters Dec.) ¶ 16; Ex. PP (Ramsey Dec.) ¶ 11; Ex. QQ (Tetteyfio Dec.) ¶ 19; Ex. RR (Turko Dec.) ¶ 20; Ex. SS (Williams Dec.) ¶ 16.

[43] Ex. ZZ (Bessant Dec.) ¶ 19; Ex. EE (Cruz Dec.) ¶ 21; Ex. FF (DeCerb Dec.) ¶ 29; Ex. GG (Holmes Dec.) ¶ 19; Ex. II (Jackson Dec.) ¶ 19; Ex. JJ (Leekin Dec.) ¶ 30; Ex. KK (Mannarino

varies from store to store.

CVS has repeatedly described ASMs' jobs in a uniform way. It posted dozens of on-line help-wanted ads that described the management job duties and the training program in almost exactly the same way, regardless of where the job opening was located. Ex. BBB & Ex. CCC. Another CVS corporate document describes the "essential functions" of the ASM job. Ex. FFF (*Henderson* Motion, Doc. 34-1 ASM Essential Functions.)

### 5. CVS Took Advantage of ASMs to Keep Its Hourly Labor Expenses Down.

In order to decrease their labor expenses, CVS took advantage of ASMs' exempt (mis)classification to squeeze as much manual labor out of them as possible. CVS corporate issued every store a labor budget, which allotted a certain number of labor hours per week.[44] Store managers were responsible for meeting the budget.[45] The hours that CVS allocated for hourly crew members decreased from year to year, especially between 2006 and 2009.[46] Sales volume, however, did not decrease.[47] As a result, the amount of time CVS required assistant store managers to spend on manual labor grew year-by-year, requiring ASMs to work longer and longer hours.[48]

CVS paid ASMs a set amount per week regardless of how many overtime hours they worked.[49] For example, one former employee reports that she was paid approximately $750.00

---

[44] Ex. FF (DeCerb Dec.) ¶ 23; Ex. CC (Carago Dec.) ¶ 9; Ex. EE (Cruz Dec.) ¶ 15; Ex. GG (Holmes Dec.) ¶ 14; Ex. II (Jackson Dec.) ¶ 12; Ex. JJ (Leekin Dec.) ¶ 25; Ex. NN (Ogren Dec.) ¶ 12; Ex. QQ (Tetteyfio Dec.) ¶ 13; Ex. RR (Turko Dec.) ¶ 15; Ex. SS (Williams Dec.) ¶ 10.
[45] Ex. FF (DeCerb Dec.) ¶ 24; Ex. JJ (Leekin Dec.) ¶ 25.
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] Ex. BB (Andersen Dec.) ¶ 21; Ex. ZZ (Bessant Dec.) ¶ 24; Ex. CC (Carago Dec.) ¶ 18;  Ex. DD (Castano Dec.) ¶ 19; Ex. EE (Cruz Dec.) ¶ 26; Ex. FF (DeCerb Dec.) ¶ 32; Ex. HH (Hunter

per week as an ASM and did not receive any overtime pay.  Ex. DD (Castano Dec.) ¶ 21.

Consistent with the statements of other ASMs,[50] Ms. Castano reports that she regularly worked

60 to 75 hours per week.  Ex. DD (Castano Dec.) ¶ 22.  If she worked a 60 hour week her

effective hourly rate was about $12.50 per hour.  Hourly shift supervisors, whom ASMs

purportedly supervised, earned anywhere from $11 to $17 per hour.  Ex. DD (Castano Dec.) ¶

20; Ex. JJ (Leekin Dec.) ¶ 36.   Including overtime premium pay, a shift supervisor earning an

hourly wage of $11 made approximately $770.00 for a 60 hour week.

## ARGUMENT

### A.  Court-Authorized Notice Is Fair, Efficient, and Advances Public Policy Goals.

The FLSA authorizes private parties to sue to recover damages, 29 U.S.C. § 201, *et seq.*,

and to bring a collective action "on behalf of themselves and other employees similarly situated."

29 U.S.C. § 216(b).  In furtherance of the FLSA's "broad remedial purpose," courts have the

authority to notify potential opt-in plaintiffs that they may join an existing action early in the

proceedings.  *Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*,

441 U.S. 944 (1979).  The Second Circuit "encourages the sending of notice to 'similarly

situated' individuals." *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319 (PAC), 2006 U.S.

Dist. LEXIS 24318, at *5 (S.D.N.Y. Apr. 24, 2006) (citation omitted).

Collective actions provide workers an opportunity to "lower individual costs to vindicate

---

Dec.) ¶ 23; Ex. II (Jackson Dec.) ¶ 21; Ex. JJ (Leekin Dec.) ¶ 34; Ex. KK (Mannarino Dec.) ¶ 22;
Ex. LL (Missak Dec.) ¶ 22; Ex. MM (Newbegin Dec.) ¶ 24; Ex. NN (Ogren Dec.) ¶ 19; Ex. OO
(Peters Dec.) ¶ 22; Ex. PP (Ramsey Dec.) ¶ 16; Ex. QQ (Tetteyfio Dec.) ¶ 24; Ex. RR (Turko
Dec.) ¶ 25; Ex. SS (Williams Dec.) ¶ 21.

[50] Ex. BB (Andersen Dec.) ¶ 21; Ex. ZZ (Bessant Dec.) ¶ 24; Ex. CC (Carago Dec.) ¶ 18;  Ex.
DD (Castano Dec.) ¶ 19; Ex. EE (Cruz Dec.) ¶ 26; Ex. FF (DeCerb Dec.) ¶ 32; Ex. HH (Hunter
Dec.) ¶ 23; Ex. II (Jackson Dec.) ¶ 21; Ex. OOO (Jones Dec.) ¶ 19; Ex. JJ (Leekin Dec.) ¶ 34;
Ex. KK (Mannarino Dec.) ¶ 22; Ex. LL (Missak Dec.) ¶ 22; Ex. MM (Newbegin Dec.) ¶ 24; Ex.
NN (Ogren Dec.) ¶ 19; Ex. OO (Peters Dec.) ¶ 22; Ex. PP (Ramsey Dec.) ¶ 16; Ex. QQ
(Tetteyfio Dec.) ¶ 24; Ex. RR (Turko Dec.) ¶ 25; Ex. SS (Williams Dec.) ¶ 21.

rights by pooling resources," and enable the "efficient resolution in one proceeding of common issues of law and fact . . . ." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). Here, where duplicative suits already exist, nationwide notice will provide a single forum in which to determine whether CVS ASMs' overtime claims have merit. *See Hoffmann-La Roche*, 493 U.S. at 170-172. It will also protect CVS from repeated overlapping nationwide discovery.

**B. Expeditious Notice is Important to Preserving the ASMs' Rights.**

Employees must receive timely notice in order for the "intended benefits of the collective action . . . to accrue." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007). The FLSA statute of limitations runs until an employee files a consent form. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Time is of the essence because ASMs' claims are diminished or extinguished every day. Notice will curtail their continued erosion, *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 162 (N.D.N.Y. 2008), and is particularly important to the FLSA's "broad remedial purpose," *Braunstein*, 600 F.2d at 336, because CVS has successfully avoided it in other cases.

**C. Plaintiffs Comfortably Exceed the Low Burden for Conditional Certification.**

Courts in the Second Circuit employ a two-step approach in handling collective actions. *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039, at **21-23 (S.D.N.Y. Sept. 28, 2006). At the initial "notice stage," plaintiffs must establish that other employees are "similarly situated" to them. *Realite v. Ark Rests., Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). Employees are "similarly situated" if they have been subjected to the same policies and practices. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003).

At the initial stage, plaintiffs face a "very low" burden, *Diaz v. Scores Holding Co.*, No.

07 Civ. 8718 (RMB), 2008 U.S. Dist. LEXIS 38248, at *13 (S.D.N.Y. May 9, 2008), and need only make a "modest factual showing." *Hoffman*, 982 F. Supp. at 261. Courts apply "a fairly lenient standard" in evaluating motions for conditional certification and, when they do, they "typically grant[]" them. *Torres*, 2006 U.S. Dist. LEXIS 74039, at **23 (internal quotation marks and citation omitted). Plaintiffs are not required to *prove* that they are similarly situated to their co-workers at this early stage – they must only "show[] a reasonable basis" for their claim that other workers are similarly situated. *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1260 (11th Cir. 2008) (citations omitted). At the second stage, after discovery, the Court may undertake a more searching factual inquiry. *Torres*, 2006 U.S. Dist. LEXIS 74039, at *23.

### 1. Plaintiffs And Other ASMs Are Similarly Situated With Respect To Their FLSA Claims.

This lawsuit challenges a single CVS policy – classifying all ASMs as exempt from the FLSA's overtime requirements and failing to pay them any overtime compensation as required under 29 U.S.C. § 207(a)(1). Courts have held that policies like this one, without much more, meet the low threshold for conditional certification.[51]

Plaintiffs make a much stronger showing here. They present evidence that ASMs' primary job duties did not differ significantly from store to store or state to state. ASMs and store managers, from 11 states and the District of Columbia, who worked in 70 different stores, testify that all ASMs spent a high percentage of their time (usually 80% or more) performing

---

[51] *See Cano v. Four M Food Corp.*, No. 08 Civ. 3005 (JFB) (AKT), 2009 U.S. Dist. LEXIS 7780, at *20 (E.D.N.Y. Feb. 3, 2009) ("As long as [the workers] were all similarly situated with *respect to being subject to the same policy* of being denied overtime compensation, and there exists a factual nexus among the plaintiffs, conditional certification of the collective action is appropriate.") (emphasis in the original); *Hallissey v. America Online, Inc., et al.*, No. 99 Civ. 3785 (KTD), 2008 U.S. Dist. LEXIS 18387, at *6–7 (S.D.N.Y. Feb. 19, 2008) (plaintiffs were similarly situated based on allegation that they were denied minimum wage and overtime payments because they were misclassified as "volunteers.").

non-managerial duties such as manual labor and customer service.[52] They also state that ASMs' authority was limited, that store managers closely supervised ASMs, that ASMs did not regularly hire or fire, that they were not paid overtime compensation – and that none of this differed from store to store. *See supra* at 11-12. These facts support a similarly situated finding.[53] CVS's own documents, including job postings and a list of "essential job functions," demonstrate its own view that ASMs are factually similar. *See supra* at 13.[54]

CVS's uniform training program also supports a finding that Plaintiffs and other ASMs are similarly situated.[55] ASMs were similarly situated during their time in Phase I in that they *had not even been taught* how to perform management functions, and during their time in Phase

---

[52] Ex. BB (Andersen Dec.) ¶ 9; Ex. ZZ (Bessant Dec.) ¶ 12; Ex. CC (Carago Dec.) ¶ 11; Ex. DD (Castano Dec.) ¶ 9; Ex. EE (Cruz Dec.) ¶ 17; Ex. FF (DeCerb Dec.) ¶ 26; Ex. GG (Holmes Dec.) ¶ 16; Ex. HH (Hunter Dec.) ¶¶ 8-10; Ex. II (Jackson Dec.) ¶ 14; Ex. JJ (Leekin Dec.) ¶ 27; Ex. KK (Mannarino Dec.) ¶ 10; Ex. LL (Missak Dec.) ¶ 10; Ex. MM (Newbegin Dec.) ¶ 12; Ex. NN (Ogren Dec.) ¶ 14; Ex. OO (Peters Dec.) ¶ 9; Ex. PP (Ramsey Dec.) ¶ 7; Ex. QQ (Tetteyfio Dec.) ¶ 15; Ex. RR (Turko Dec.) ¶ 17; Ex. SS (Williams Dec.) ¶ 12.

[53] *See Morgan*, 551 F.3d at 1250–51; *Stillman v. Staples, Inc.*, No. 07 Civ. 849 (KSH), 2008 U.S. Dist. Lexis 32853, at *26-27 (D.N.J. Apr. 22, 2008) (plaintiff sales managers similarly situated to potential opt-ins in that they did not hire, fire, train employees and spent "vast majority" of time stocking, working as cashiers, unloading the truck, cleaning, and selling products directly to customers); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090 at *13–14 (S.D.N.Y. Oct. 4, 2006) (plaintiff assistant store managers similarly situated to opt-in class because none performed primarily managerial duties and all were uniformly classified as exempt); *Pendlebury v. Starbucks Coffee Co.*, No. 04 Civ. 80521 (KAM), 2005 U.S. Dist. LEXIS 574, at **1-3, 9-10 (S.D. Fla. Jan. 3, 2005) (plaintiff store managers primarily performed non-exempt work, were paid similarly to hourly employees, and did not regularly supervise two or more employees).

[54] *See Morgan*, 551 F.3d at 1270 (relying in part on store managers' job descriptions and list of "essential job functions" in granting summary judgment in favor of entire FLSA collective); *Delgado v. Ortho-McNeil, Inc.*, No. 07 Civ. 263 (CJC), 2007 U.S. Dist. LEXIS 74731, at *8–9 (C.D. Cal. Aug. 6, 2007) (finding "sufficient similarity to warrant conditional certification" in part due to identical job postings in several states).

[55] *See Cruz v. Dollar Tree Stores, Inc.*, Nos. 07 Civ. 2050, 07 Civ. 4012 (SC), 2009 U.S. Dist. Lexis 46855, at *22 (N.D. Cal. May 26, 2009) (common issues predominated in Rule 23 store manager misclassification case in part because of common training program); *Stillman*, 2008 U.S. Dist. Lexis 32853, at *14, 28 (plaintiffs met similarly situated standard based in part on common training program); *Bouder v. Prudential Fin., Inc.*, No. 06 Civ. 4359 (DMC), 2008 U.S. Dist. Lexis 25103, at *13 (D.N.J. Mar. 27, 2008) (same).

II, when CVS finally provided them with the "necessary" training.  *See supra* at 18-19.

The Answers CVS has filed in the recent wave of ASM overtime litigation also reflect CVS's own perception that ASMs are factually similar to one another.  The affirmative defenses it repeats in Answer after Answer do not contain a single factual allegation unique to any plaintiff.[56]  Even when CVS raises defenses that require elaboration under the applicable pleading standards, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), it cannot muster a supporting allegation that differentiates one ASM from another.[57]

### 2.  Simply Asserting an FLSA Exemption Does Not Preclude a Collective Action.

CVS will claim that its exemption defenses preclude a collective action because they require thousands of fact-specific individualized analyses of the tasks that every ASM performed each day.  This is overblown.  "Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits."  *Morgan*, 551 F.3d at 1263.

A host of cases, including many brought by retail workers like Plaintiffs, reject the notion that misclassification cases cannot be collective actions.  In two related cases against the New York drug store chain Duane Reade, for example, the court granted conditional certification to two groups of misclassified drug store assistant managers, rejecting the "individualized factual inquiry" argument.  *Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at **13-25 (S.D.N.Y. Oct. 4, 2006); *Chowdhury v. Duane Reade, Inc.*, No. 06

---

[56] Ex. III (*Traebecke*, Defs.' Answer (Sept. 23, 2009)); Ex. JJJ (*Henderson*, Defs.' Answer (June 23, 2009)); Ex. KKK (*McLean*, Def.'s Answer (Mar. 31, 2009)); Ex. LLL (*Nash*, Defs.' Answer (Mar. 11, 2009)); Ex. MMM (*Tata*, Defs.' Answer (Mar. 2, 2009)); Ex. NNN (*Gross*, Defs.' Answer to Pls.' Second Am. Compl. (Apr. 17, 2006)).

[57] For example, in this case, CVS alleges that "Plaintiffs' claims . . . are barred because their unwillingness or inability to perform the required duties of the position held does not alter their status as 'exempt' under the FLSA and other applicable laws."  CVS pleads this without a single individualized supporting factual allegation.  This defense also suggests that it is CVS's view that the "required duties" of ASMs do not vary and should determine the exemption question.

Civ. 2295 (GEL), 2007 U.S. Dist. LEXIS 73853, at **11-18 (S.D.N.Y. Oct. 2, 2007). Both

cases rejected arguments about plaintiffs' individual differences as "misplaced" or "irrelevant" to

the inquiry into whether plaintiffs were similarly situated. *Damassia*, 2006 U.S. Dist. LEXIS

73090, at *21; *Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at **15-16. Similarly, in *Pendlebury*

*v. Starbucks*, the court authorized nation-wide notice to Starbucks managers based on plaintiffs'

verified complaint and four declarations affirming that store managers did not regularly

supervise more than two employees and their primary duties involved non-exempt work.

*Pendlebury*, 2005 U.S. Dist. LEXIS 574, at **1-4, 7-12. The court in *Pendlebury* dismissed

defendant's arguments regarding individual differences as best addressed at the more stringent,

second stage of the certification process. *Id.* at **10-12.[58]

CVS may cite *Holt v. Rite Aid Corp.*, where the plaintiffs unsuccessfully sought

conditional certification based on declarations of workers from only three states and little more.

333 F. Supp. 2d 1265, 1268 (M.D. Ala. 2004). Here, Plaintiffs submit declarations from 11

states and the District of Columbia and other substantial evidence. *See Damassia v. Duane*

*Reade*, 250 F.R.D. 152, 161 (S.D.N.Y. 2008) (distinguishing *Holt* based on quality of evidence).

Moreover, the *Holt* court weighed competing evidence even though it was making a first-stage

---

[58] *See also Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) (notice to misclassified retail assistant store managers in 23 states); *Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915 (DLC), 2003 U.S. Dist. LEXIS 7988, at **11-12 (S.D.N.Y. May 14, 2003) (nationwide notice to misclassified supermarket managers); *Gjurovich*, 282 F. Supp. 2d at 104-05 (S.D.N.Y. 2003) (notice to misclassified supermarket workers); *Creten-Miller v. Westlake Hardware, Inc.*, No. 08 Civ. 2351 (KHV), 2009 U.S. Dist. LEXIS 60393, at ** 2-4 (D. Kan. July 15, 2009) (multi-state notice to supervisors at hardware store chain); *Stillman*, 2008 U.S. Dist. LEXIS 32853, at **26-29 (nationwide notice to sales managers at retail office supply store); *Jackson v. Papa John's USA, Inc.*, No. 08 Civ. 2791 (JSG), 2008 U.S. Dist. LEXIS 107650, at *15 (N.D. Ohio Feb. 13, 2008) (nationwide notice to assistant managers of pizza restaurants); *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1016-26 (D. Minn. 2007) (denying motion to decertify nationwide class of coffee store managers); *Johnson v. Big Lots Stores, Inc.*, Nos. 04 Civ. 3201, 05 Civ. 6627 (SSV), 2007 U.S. Dist. LEXIS 96151, at **4-7 (E.D. La. Aug. 21, 2007) (notice to assistant managers at 1,400 stores across 46 states).

determination. *Holt*. 333 F. Supp. 2d at 1274, n.4. The practice in this Circuit is to wait until after discovery to do so. *See Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at *9-11 ("it would be inappropriate to make more than a 'preliminary determination'" during initial, notice stage where fact discovery not yet completed); *Damassia*, 2006 U.S. Dist. LEXIS 73090, at **12-13 (rejecting defendants' request for a "final" determination on whether plaintiffs were similarly situated at initial, notice stage, despite completion of some discovery ).

Moreover, Plaintiffs demonstrate that they and other ASMs are factually similar in a number of ways relevant to CVS's primary affirmative defense, the FLSA's executive exemption. The executive exemption, 29 U.S.C. § 213(a)(1), requires CVS to prove that (1) they compensated Plaintiffs on a salary basis, (2) the employee's "primary duty is management of the enterprise in which the employee is employed . . .;" (3) the employee "customarily and regularly directs the work of two or more other employees;" and (4) "the employee has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(1)-(4).[59] Because CVS has the burden to prove each prong of the executive exemption, *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991), a finding that Plaintiffs may be similarly situated with respect to any one of the prongs makes this case appropriate for collective treatment.

Plaintiffs present substantial evidence that ASMs are factually similar with respect to three prongs, the second, third, and fourth. As for the second prong, ASMs' primary duties did

---

[59] Proving an FLSA exemption is the employer's burden. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). All FLSA exemptions are to be construed narrowly, in favor of the employee. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) ("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and frustrate the announced will of the people."); *Bilyou v. Duchess Beer Distrib., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002).

not vary from store to store because their most important and time-consuming tasks were manual labor and customer service tasks, *see e.g.*, Ex. FF (DeCerb Dec.) ¶ 26 ("Based on my observation as a store manager, I estimate that [ASMs] at my stores in the time period from 2006 to March 2009 spent an average of approximately 80% of their worktime performing manual labor and customer-service related duties"); [60] not the managerial tasks that the exemption requires, *see* 29 C.F.R. § 541.102 (listing managerial duties); 29 C.F.R. § 541.700 (explaining "primary duty"); *Morgan*, 551 F.3d at 1269-70 (upholding primary duty prong of jury verdict in favor of retail store managers based on similar evidence). They had little freedom from supervision. *See, e.g.*, Ex. BB (Andersen Dec.) ¶ 17 ("all assistant store managers took direction from their store managers and did not make any important decisions on their own. . . . They relied heavily on store managers' plans and directions."); Ex. GG (Holmes Dec.) ¶ 20; *Morgan*, 551 F.3d at 1271. Many of these tasks were the same tasks that hourly shift supervisors also performed. *See, e.g.*, Ex. CC (Carago Dec.) ¶ 17.

Additionally, in every store, the store managers, not the ASMs, were responsible for running the store. *See, e.g.*, Ex. ZZ (Bessant Dec.) ¶¶ 15-19, 21-22 ("The store manager made all important decisions, including hiring, firing, handling employee disputes, setting employee schedules, approving employee time off, ordering promotional materials and holiday decorations, and handling unusual customer service requests."); Ex. FF (DeCerb Dec.) ¶¶ 28-30 ("As a store manager, my duties were very different from assistant store managers' duties at each of the stores where I worked. . . . As a store manager, I had discretion that assistant store

---

[60] *See also* Ex. BB (Andersen Dec.) ¶ 9; Ex. ZZ (Bessant Dec.) ¶12; Ex. CC (Carago Dec.) ¶11; Ex. DD (Castano Dec.) ¶ 9; Ex. EE (Cruz Dec.) ¶ 17; Ex. GG (Holmes Dec.) ¶16; Ex. HH (Hunter Dec.) ¶ 8; Ex. II (Jackson Dec.) ¶ 14; Ex. JJ (Leekin Dec.) ¶ 27; Ex. KK (Mannarino Dec.) ¶10; Ex. LL (Missak Dec.) ¶ 10; Ex. MM (Newbegin Dec.) ¶ 12; Ex. NN (Ogren Dec.) ¶ 14; Ex. OO (Peters Dec.) ¶ 9; Ex. PP (Ramsey Dec.) ¶ 7; Ex. QQ (Tetteyfio Dec.) ¶ 15; Ex. RR (Turko Dec.) ¶ 17; Ex. SS (Williams Dec.) ¶ 12.

managers did not have because of their position.").  Also, given the number of hours the ASMs

worked, they earned the same as, or less than, what the hourly shift-supervisors below them

earned for working the same number of hours.[61]  *See, e.g.*, Ex. DD (Castano Dec.) ¶¶ 20-22; Ex.

JJ (Leekin Dec.) ¶¶ 36-37.  The CVS corporate office set these rates.  Ex. AAA (Corp Rep. Dep.)

at 93:9-94:18**;** *see also Morgan*, 551 F.3d at 1271.

Likewise, regarding the third prong, the Plaintiffs make a strong showing that in no store

did ASMs "customarily and regularly direct the work" of any other employees.[62]  *See* 29 C.F.R.

§ 541.701 (explaining "customarily and regularly").  ASMs and all other employees took their

orders from the store manager and from the CVS corporate office.[63]  As for the fourth prong,

ASMs also were uniformly unable to hire or fire, and they did not regularly make meaningful

recommendations, especially during training, when they had not even been taught how to make

such determinations.[64]

### 3. Evidence of Varying Job Duties Does Not Defeat Conditional Certification.

CVS will likely claim that the ASMs' job duties varied wildly from store to store

depending on the store's size, sales volume, region, and district.  It will probably cite to dozens

of declarations it has gathered from its (captive) current ASMs, depositions it took in other cases,

and other evidence to which Plaintiffs have not had access and/or an opportunity to challenge.

This evidence would not defeat conditional certification for three reasons.

---

[61] An ASM who earns $750.00 per week and works 60 hours earns an effective hourly rate of $12.50 per hour.  An hourly shift supervisor who earns $12.00 per hour and works 60 hours would earn $840.00 including overtime premium pay.

[62] *See e.g.*, Ex. BB (Andersen Dec.) ¶ 14; Ex. FF (DeCerb Dec.) ¶¶ 27, 30.

[63] *See e.g.*, Ex. JJ (Leekin Dec.) ¶¶ 17, 19-26 ("As a store manager, I receive many communications from the CVS corporate office through email, the SMART system, and the Workload Planner.")

[64] *See e.g.*, Ex. PP (Ramsey Dec.) ¶¶ 5, 11, 13 ("Phase I training did not consist of any training on hiring or firing or making recommendations about hiring, firing, or changing employment status.")

First, it is premature at this early stage. At this point, Plaintiffs seek a preliminary determination. For notice to issue, Plaintiffs only need to make a "modest factual showing." *Damassia*, 2006 U.S. Dist. Lexis 73090, at *19. Given Plaintiffs' strong showing here, any evidence that CVS submits can "[a]t most . . . raise questions as to whether Plaintiffs could prevail under a more stringent standard and whether the opt-in plaintiff will survive a decertification motion at the close of discovery." *Id.*

The proper focus for now is on Plaintiffs' submission and whether it meets their low burden. At the second stage, after Plaintiffs have had the opportunity to depose CVS's affiants and challenge CVS's other evidence, CVS will have "ample opportunity" to demonstrate that Plaintiffs' case should not proceed as a collective action. *Id.* at **24-25. At that point, the Court can weigh CVS's evidence against Plaintiffs' evidence and decide whether the collective should survive. *See Pendlebury*, 2005 U.S. Dist. LEXIS 574, at **10-11 (noting Starbucks's affidavit evidence regarding employees' managerial duties "raise[d] factual matters not appropriate for consideration at this notice stage of litigation").

Second, the standard defense argument – that no two workers are alike and the Court must undertake an individualized, person-by-person analysis to resolve the case – is undermined here by the fact that CVS appears to have classified the ASMs as exempt in one fell swoop, without examining each of their actual job duties. *See* Ex. AAA (Corp Rep. Dep.) at 41:10-14; 172:19-25; 213:24-214:3. As a result, all ASMs' claims "are based on the same course of events and legal theory," namely that CVS's "decision to classify its assistant managers as 'exempt' is inconsistent with the requirements of the FLSA." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. at

158 (granting Rule 23 class certification to drugstore assistant managers).[65]  Any differences

among ASMs' duties were clearly "not material" to CVS's "determination of whether the job is

exempt from overtime requirements."  *Id*. at 159.[66]  It would be "disingenuous" for CVS, "on the

one hand, to collectively and generally decide that all [ASMs] are exempt from overtime

compensation without any individualized inquiry, while on the other hand, claiming that

plaintiffs cannot proceed collectively to challenge the exemption."  *Nerland v. Caribou Coffee

Co., Inc.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007); *see also Morgan*, 551 F.3d at 1263;

*Pendlebury*, 518 F. Supp. 2d at 1352.

Third, even where the defendants assert an FLSA exemption defense, conditional

certification does not require proof "that the prospective class members all performed the same

duties."  *Cano v. Four M Food Corp*., No. 08 Civ. 3005 (JFB)(AKT), 2009 U.S. Dist. LEXIS

7780, at *20 (E.D.N.Y. Feb. 3, 2009) (conditionally certifying class of maintenance workers and

holding that "[i]t is not necessary for the purposes of conditional certification that the prospective

class members all performed the same duties, or worked during the same time periods, or worked

at the same locations as the named plaintiffs.").  Potential opt-in plaintiffs need not be "clones of

one another" to be similarly situated.  *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *6.  They

need not show uniformity in "each and every aspect of employment."  *Holbrook v. Smith &

---

[65] Misclassification wage and hour claims often satisfy commonality and typicality under the
stricter Rule 23 standard, *Damassia*, 250 F.R.D. at 157-158, based in part on blanket
classification decisions.  *See, e.g.*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371
(S.D.N.Y. 2007); *Alba v. Papa John's USA, Inc.*, No. 05 Civ. 7487 (GAF), 2007 U.S. Dist.
LEXIS 28079, at **24–25 (C.D. Cal. Feb. 8, 2007); *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520
(TEH), 2006 U.S. Dist. LEXIS 71794, at **30–31 (N.D. Cal. Aug. 31, 2006); *Goldman v.
Radioshack Corp.*, No. 03 Civ. 0032 (JRS), 2005 U.S. Dist. LEXIS 8742, at **14-15 (E.D. Pa.
May 9, 2005).
[66] The Ninth Circuit's recent decision in *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935,
946 (9th Cir. 2009), does not undermine this argument.  There, the Court simply held that a
blanket classification policy alone is not enough to meet the strict Rule 23 certification standards.

*Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007).

### D.       The Court Should Approve Plaintiffs' Proposed Notice.

Plaintiffs request that the Court authorize them to send their proposed notice, attached to Plaintiffs' Notice of Motion as Exhibit A, to all ASMs who have worked at any CVS retail store, except those in California and Florida, between September 4, 2006 and the present ("Potential Opt-In Plaintiffs"). Plaintiffs' proposed notice is "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court conditionally certify this case as a collective action; order CVS to produce a computer-readable data file containing all Potential Opt-In Plaintiffs' names, last-known mailing addresses, last-known telephone numbers, Social Security numbers, work locations, and dates of employment; and authorize the issuance of Plaintiffs' proposed notice to all Potential Opt-In Plaintiffs.

Dated:       November 6, 2009
             New York, New York

                              Respectfully submitted,
                              **OUTTEN & GOLDEN LLP**
                              By:

                              /s/ Justin M. Swartz
                              Justin M. Swartz (JS 7989)

                              Justin M. Swartz (JS 7989)
                              Ossai Miazad (OM 1127)
                              Delyanne Barros (DB 8788)
                              3 Park Avenue, 29th Floor
                              New York, New York 10016
                              Telephone: 212-245-1000
                              *Attorneys for Plaintiff and the Putative Classes*